IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CT-3075-FL

| | |
|---|---|
| JOHN SCOTT HUDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| DETECTIVE J. PINNEY, DETECTIVE GREEN, DETECTIVE BARNES, and DETECTIVE SPENCER, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on defendants' motion for summary judgment (DE 83), filed pursuant to Federal Rule 56. This motion was fully briefed and thus the issues raised are ripe for decision. For the reasons stated below, defendants' motion is granted.

**STATEMENT OF THE CASE**

On March 21, 2016, plaintiff, a state inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging defendants used excessive force against him during his arrest.[1] His claims survived frivolity review.[2] However, because plaintiff named John Doe defendants, the court directed him to amend his complaint to properly identify these individuals. The court directed to New Hanover County Attorney to assist plaintiff with this identification.

---

[1] Plaintiff's complaint is not verified because it does not contain a statement swearing under penalty of perjury that the factual allegations therein are true and correct. See World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co., 783 F.3d 507, 516 (4th Cir. 2015).

[2] The court dismissed two defendants named solely in their supervisory capacity. Plaintiff sought reconsideration of that dismissal, which the court denied.

The New Hanover County Attorney complied with this directive, but plaintiff was still unable to identify the John Doe defendants. Because he was unable to do so, plaintiff filed several motions requesting additional discovery. The court allowed these motions in part and denied them in part, appointing North Carolina Prisoner Legal Services, Inc. ("NCPLS") for the limited purpose of assisting plaintiff in identifying the John Doe defendants. With NCPLS's assistance, plaintiff identified the John Doe defendants as Detectives J. Pinney, Green, Barnes, and Spencer. Plaintiff filed an amended complaint to reflect this identification.[3]

Because plaintiff filed defendants' discovery responses with the court, apparently as argument in support of his claims, the record clearly indicates defendants provided plaintiff with ample discovery. Nonetheless, plaintiff filed numerous motions seeking additional discovery, as well as another motion to amend his complaint. The court denied these motions.[4]

Defendants filed the instant motion on March 13, 2018, accompanied by a memorandum of law, statement of material facts, and appendix. Defendants appendix includes affidavits from each defendant, affidavit of third-party Jeffrey Rohena, and an exhibit detailing the discharge of Pinney's taser.

---

[3] The amended complaint is also not verified. Moreover, the amended complaint simply asks the court to replace any instance of "John Doe" with all four specifically named individuals. Thus, plaintiff's complaint is still unclear as to the specific actions of each individual defendant.

[4] Plaintiff's proposed amendments, which included a challenge to the validity of his conviction, were deemed futile. The court denied plaintiff's discovery requests because they did not comply with the Federal Civil Rules or the Local Rules of this court and sought irrelevant materials.

2

Plaintiff's response in opposition is accompanied by a memorandum of law, statement of material facts, and appendix. Plaintiff's appendix contains his own affidavit[5], police reports related to plaintiff's arrest, a use of force report from the New Hanover County Sheriff's Office, an exhibit detailing the discharge of Pinney's taser, photographs and a hand drawn map of the neighborhood where plaintiff's arrest occurred, the New Hanover County Sheriff's Office's use of force policy, correspondence from NCPLS, a newspaper article covering plaintiff's arrest, and a return of service on the search warrant executed during plaintiff's arrest. Defendants filed a reply, and plaintiff filed a surreply.

## STATEMENT OF THE FACTS

The facts viewed in the light most favorable to plaintiff may be summarized as follows. On July 16, 2013, Rohena and Green intercepted a package at a FedEx Express in Wilmington, North Carolina, believing it to contain contraband. (Rohena Aff. (DE 86-1) ¶¶ 5-6). The package was addressed to Travis Angel at 905 N. 5th Street in Wilmington. (Id. ¶ 7). A subsequent canine search indicated the package contained narcotics. (Id. ¶ 8). Rohena then obtained a warrant to search the package. (Id. ¶ 9). The package contained 36.5 ounces of heroin. (Id.). Rohena and Green placed a monitored GPS and light sensor in the package and then re-sealed it. (Id. ¶ 10). Rohena then obtained an anticipatory search warrant for 905 N. 5th Street. (Id. ¶ 11).

---

[5] Plaintiff's affidavit continues to refer to "John Does." (See, e.g., Pl. Aff. (DE 90-1) ¶ 8). In addition, plaintiff's summary judgment materials continue to address claims not before the court, such as his dismissed supervisory liability claims and the challenges to the validity of his conviction. Finally, for the first time, plaintiff alleges that Pinney is the only defendant responsible for the allegedly excessive force described in the complaint. This assertion clearly contradicts plaintiff's previous filings with the court. See, e.g. ((DE 55-1) 2) (alleging Green used excessive force against him); (DE 56) 1) (filing by plaintiff noting Green was defendant who kicked him)). Because of these contradictions, plaintiff's affidavit does not serve to create a material issue of fact. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) ("The object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"); see also Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999); Genesis Office Sys., Inc. v. PNC Bank, N.A., 639 F. App'x 939, 940 (4th Cir. 2016).

3

After obtaining the anticipatory search warrant, Rohena requested assistance from other detectives for conducting a controlled delivery of the package and in executing the anticipatory search warrant. (Id. ¶ 11). The detectives planned for Rohena to pose as a FedEx employee and deliver the package to Angel, while the other detectives secured the premises and detained any occupants. (Id. ¶¶ 12-13).

Rohena drove a delivery van to 905 N. 5th Street with Green hidden in the back. (Id. ¶ 15). Barnes, Pinney, and Spencer established surveillance approximately one block away. (Spencer Aff. (DE 86-4) ¶ 6. Additional detectives took up positions at other nearby locations. (Rohena Aff. (DE 86-1) ¶ 15).

When Rohena arrived at 905 N. 5th Street, he observed Angel and Rebecca Maxwell sitting on the front porch. (Id. ¶ 16). Green remained hidden in the van, listening in through a muted cellular phone. (Green Aff. (DE 86-2) ¶ 18). Rohena delivered the package to Angel, who took possession of it and took it inside the residence. (Rohena Aff. (DE 86-1) ¶ 17). Maxwell followed behind him. (Id.). Rohena then returned to the van, and notified the other detectives that the package had been delivered, accepted, and taken inside the residence. (Id. ¶ 18). Rohena then drove around the block, and parked in a discrete location to continue surveillance of the residence. (Id. ¶ 19).

Approximately two minutes later, plaintiff and his son entered the residence. (Id. ¶ 20). A few seconds later, the GPS sensor indicated that the package was moving towards the rear of the residence. (Id. ¶ 21). Rohena then gave the order to execute the search warrant. (Id. ¶ 22).

Rohena and other detectives entered the front door, performed a protective sweep, and then detained Angel, Maxwell, and plaintiff's son. (Id. ¶¶ 24-25). Meanwhile, other detectives,

4

including all four defendants, flanked either side of the residence and proceeded to the backyard. (Id. ¶ 24). When the detectives arrived in the backyard, they saw plaintiff standing near a shed. (Green Aff. (DE 86-2) ¶ 24). Plaintiff was holding the heroin package under his left arm, and appeared to be trying to unlock the door to the shed. (Id.). The detectives identified themselves, and then ordered plaintiff to get down on the ground and show them his hands. (Id. ¶ 25). Plaintiff dropped the heroin package but did not comply with the detectives' orders. (Id. ¶¶ 25-27). The detectives approached, continuously repeating their instructions for plaintiff to get on the ground. (Id. ¶ 27). Plaintiff concedes he did not comply with these orders, but instead "just froze." (Compl. (DE 1) 8; (Pl. Aff. (DE 90-1) ¶ 5)).

Green then kicked plaintiff in the chest in an attempt to get him on the ground as ordered.[6] (Green Aff. (DE 86-2) ¶ 28). However, the force of the kick was inadequate, and plaintiff remained standing while Green stumbled backwards. (Id.; see also Compl. (DE 1) 8)). Detectives then tackled plaintiff to the ground. (Green Aff. (DE 86-2) ¶ 28). While he was on the ground, detectives ordered plaintiff to place his hands behind his back. (Pinney Aff. (DE 86-5) ¶ 14). Plaintiff did not obey, and instead reached for the waistband of his jeans.[7] (Id.). Detectives repeated their instruction and attempted to attempted to gain control of plaintiff's arms, but were unable to. (Id. ¶ 15).

Based on plaintiff's non-compliance and believing that plaintiff may have a firearm concealed in his waistband, Pinney tased plaintiff. (Id. ¶ 16). While doing so, Pinney also

---

[6] As previously noted, despite ample discovery, plaintiff's filings are not consistent in identifying which defendants used force against him and when. In his summary judgment responses, plaintiff now asserts Pinney, not Green, kicked him. (See Pl. Aff. (DE 90-1)).

[7] Plaintiff concedes he did not comply, although he asserts he was unable to do so because his hands were pinned underneath his body. (Compl. (DE 1) 9). Plaintiff does not specifically contest defendants' assertion that, while his arms were under his body, he reached for his waistband.

5

inadvertently tased Green. (Green Aff. (DE 86-2) ¶ 32). Plaintiff asserts he was kicked a second time in the stomach during this incident. (Compl. (DE 1) 10). He immediately became compliant, and the detectives then handcuffed plaintiff and escorted him back to the residence. (Pinney Aff. (DE 86-5 ¶ 18). Once inside, Pinney searched plaintiff and found two bags of heroin in his front pocket, but no weapons. (Rohena Aff. (DE 86-1) ¶ 27). Plaintiff did not require or request medical treatment after this use of force. (See Pl. Ex. D (DE 90-8) 6).

Plaintiff was eventually charged, tried, and convicted of felony trafficking in heroin, and felony possession with the intent to sell and/or deliver. (Id. ¶ 29).

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading" but "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248-49; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party thus "bears [the] burden of showing, by means of affidavits or other verified evidence, that [a] genuine dispute of material fact exists." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). There is no issue for trial unless there is sufficient

6

evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.     Excessive Force

A seizure that is carried out through the use of excessive force is in violation of the Fourth Amendment. Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013) (citing Waterman v. Batton, 393 F.3d 471, 476 (4th Cir.2005)). In assessing whether an officer has employed excessive force, courts are instructed to apply a "standard of objective reasonableness." Cooper, 735 F.3d at 158 (quoting Clem v. Corbeau, 284 F.3d 543, 550 (4th Cir.2002)). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal quotations and citations omitted); see Smith v. Ray, 781 F.3d 95, 101 (4th 2015). Whether the officers' conduct was reasonable is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. In sum, "the question is whether the totality of the circumstances justifie[s] a particular sort of . . . seizure." Id. (quoting Tennessee v. Garner, 471 U.S. 1, 8–9 (1985)). The Fourth Amendment jurisprudence of the Supreme Court "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. (citation omitted).

The Court "must give careful attention to the facts and circumstances of each particular case, including three factors in particular: [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively

7

resisting arrest or attempting to evade arrest by flight." Smith, 781 F.3d at 101 (internal quotation marks omitted).  Whether the officer's conduct was reasonable is a question of law to be decided after determining "the relevant set of facts and draw[ing] all inferences in favor of the nonmoving party to the extent supportable by the record."  Scott v. Harris, 550 U.S. 372, 381 n.8 (2007).

While the lack of serious physical injury is not, in itself, dispositive of a Fourth Amendment excessive force claim, the "absence of [a] serious injury" nevertheless remains relevant in an excessive force inquiry.  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). One "does not lose his ability to pursue an excessive force claim merely because he had the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38.

1.   Defendants' Kicking of Plaintiff

The court first addresses plaintiff's allegation that defendants kicked him twice.  This use of force involved a situation where defendants were executing a search warrant involving narcotics and plaintiff was known to be carrying contraband – 36.5 ounces of heroin. The crimes at issue were severe. (See N.C.G.S. § 90-95, et seq.).  During an arrest for a serious offense often linked with the use of firearms, plaintiff concedes he did not comply with defendants' instructions to show defendants his hands and get on the ground.  See Ybarra v. Illinois, 444 U.S. 85, 106 (1979) ("In the narcotics business, firearms are as much 'tools of the trade' as are most commonly recognized articles of narcotics paraphernalia.").  Defendants' initial attempt to use minimal force was, by plaintiff's own admission, insufficient to take plaintiff to the ground.  Even after defendants took plaintiff to the ground, he remained noncompliant, and appeared to be reaching for a weapon.  With regard to the kicks, there is no evidence plaintiff suffered a serious physical injury.  Plaintiff has not

8

proffered any evidence indicating he requested or required medical treatment after this use of force. On this record, defendants did not violate the Fourth Amendment when they kicked plaintiff.

2.  Defendants' Use of a Taser

"Deploying a taser is a serious use of force." Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 902 (4th Cir. 2016). Therefore, Fourth Circuit "proportional force only when deployed in response to a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the taser." Id. at 903.

Again, as per the undisputed evidence summarized above, a reasonable officer could have perceived an immediate danger that could be mitigated by using a taser. Specifically, defendants–after using a minimal use of force that proved ineffective–were unable to obtain plaintiff's compliance. Defendants faced a tense, uncertain, and rapidly evolving situation, and were forced "to make [a] split-second judgment[ ]." Plumhoff v. Rickard, 572 U.S. 765, 775 (2014). After defendants took plaintiff to the ground, he still did not he comply with instructions to put his hands behind his back. Plaintiff's hands were beneath him, and defendants reasonably believed that he may have been reaching for a weapon. It was not constitutional error to deploy a taser when defendants reasonably believe plaintiff may have been reaching for a firearm. See, e.g., Hagans v. Franklin Cty. Sheriff's Office, 695 F.3d 505, 509 (6th Cir. 2012) (finding use of taser reasonable where arrestee refused to be handcuffed); Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (holding that use of taser reasonably proportionate during a traffic stop when arrestee repeatedly refused to comply with verbal commands).

C.    Qualified Immunity

Defendants assert the defense of qualified immunity. See Def. Mem [DE-84], pp. 17-21. Where a defendant officer asserts a defense of qualified immunity, a two-step inquiry applies. "The first step is to determine whether the facts, taken in the light most favorable to the non-movant, establish that the officer violated a constitutional right." Yates v. Terry, 817 F.3d 877, 884 (4th Cir. 2016). If the facts establish the violation of a constitutional right, at the second step, courts determine whether that right was clearly established. Id. In this case, the facts taken in the light most favorable to the non-movant do not establish the violation of a constitutional right. Therefore the court need not reach the second step. See id.

In the alternative, plaintiff has not established a violation of a clearly established constitutional right. "Qualified immunity shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." Armstrong, 810 F.3d at 907 (quotations omitted). "The dispositive question is whether the violative nature of particular conduct is clearly established." Id. (quotations omitted). Thus the court must first "define the precise right into which [it is] inquiring." Id. Then, the court determines "whether it was clearly established at the time [defendant] acted." Id.

"The constitutional right in question in the present case, defined with regard for [defendant's] particular . . . conduct, is [plaintiff's] right not to be subjected to tasing" and being kicked while offering repeated resistance to a lawful seizure, after being commanded to submit to arrest, and in the context of a serious drug offense, where defendant also was reaching for his waistband. Id. Such a constitutional right was not "clearly established" by case law prior to April 2014. The court

10

is guided in this analysis by contrasting this case with Armstrong and others in which the Fourth Circuit found a constitutional violation. Notably, in Armstrong, the Fourth Circuit found an excessive force violation with taser use under the following circumstances, but found that the defendant officer was entitled to qualified immunity:

> Armstrong was a mentally ill man being seized for his own protection, was seated on the ground, was hugging a post to ensure his immobility, was surrounded by three police officers and two Hospital security guards, and had failed to submit to a lawful seizure for only 30 seconds. A reasonable officer would have perceived a static stalemate with few, if any, exigencies—not an immediate danger . . . .

810 F.3d at 906 (emphasis added). In Yates v. Terry, 817 F.3d 877, 885 (4th Cir. 2016), the court found a constitutional violation and no qualified immunity where plaintiff was tased under the following circumstances:

> [plaintiff] complied with [officer's] orders to place his hands on the car before [officer] tased him for turning his head. After this taser application, [plaintiff] fell to the ground where he remained when [officer] tased him a second time for no apparent reason. Although [plaintiff] reached for his cell phone before being tased a third time, [plaintiff's] brother testified that "[t]he officer let [plaintiff] slide me the phone" and "knew [plaintiff] was giving me the phone to call [plaintiff's] commander because he let him do it.

Id. (emphasis added). This case does not present the same critical factors, as emphasized above, as found in Armstrong and Yates. In any event, because defendant's conduct took place prior to Armstrong and Yates, those cases cannot serve to demonstrate a clearly established right for purposes of qualified immunity here.

Additional earlier cases involving excessive force violations are instructively distinguishable on critical facts, such that a reasonable officer in defendant's position would not find his conduct in violation of clearly established case law. See, e.g., Park v. Shiflett, 250 F.3d 843, 848 (4th Cir. 2001) (finding violation where officer "twisted [female plaintiff's] arm behind her back, threw her

11

up against the building, and handcuffed her. He sprayed her twice in the eyes with Oleoresin Capsicum ('OC') spray from close range" in violation of department policy); Rowland v. Perry, 41 F.3d 167, 171-172 (4th Cir. 1994) (noting that after officer observed plaintiff pick up $5 dropped on the ground, plaintiff "was merely standing at the corner . . . when Officer [defendant] approached, and [plaintiff] never ran from or was chased by the officer. . . . [W]ithout any provocation, Officer [defendant] grabbed his collar and jerked him around, yelling harshly as he did so. Frightened, [plaintiff] instinctively tried to free himself. In response, Officer [defendant] punched him and threw him to the ground. Officer [defendant] then used a wrestling maneuver, throwing his weight against [plaintiff's] right leg and wrenching the knee until it cracked").

Here, plaintiff possessed contraband implicating him in a severe drug offense, a crime linked with the use of firearms. He did not comply with defendants' directives as they attempted to arrest him. Defendants believed plaintiff may have been reaching for a weapon. In this posture, it cannot be said that "every reasonable official" would have understood that the force used to subdue plaintiff was unreasonable. District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018). Put another way, plaintiff did not have a clearly established constitutional right to be free from kicks and use of taser by officers when he repeatedly refused to comply with instructions during his arrest for a serious drug offense, and he was reaching for his waistband. See Graham, 490 U.S. at 396. Thus, when this use of force took place, defendants did not violate plaintiff's clearly established constitutional rights. For these reasons, defendants are entitled to qualified immunity.

## CONCLUSION

Based on the foregoing, the court GRANTS defendants' motion for summary judgment (DE 83). The court DIRECTS the clerk to close this case.

SO ORDERED, this the 29th day of March, 2019.

                                                      LOUISE W. FLANAGAN
                                                     United States District Judge